UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KARRI J. WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:11-CV-229 |
| | ) (VARLAN/SHIRLEY) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11, 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15, 16]. Plaintiff Karri J. Watson seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On May 17, 2007, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began June 1, 2002. [Tr. 131-132]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On July 24, 2008, a hearing was held before an ALJ to review determination of Plaintiff's claim, and an unfavorable decision was rendered. On January 6, 2009, the Appeals Council remanded the case to the ALJ.

A second hearing was held on October 7, 2009, [Tr. 562-85], and a second unfavorable decision was issued on January 29, 2010. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since June 1, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia[,] asthma, bipolar disorder[,] obsessive compulsive disorder and panic attacks with agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). In addition, she must avoid extreme temperatures and because of breathing difficulty is precluded from work that exposes her to dust, fumes, smoke, chemicals or noxious gases; she has a limited or satisfactory or mild ability to concentrate and understand, remember and carry out complex instructions and respond appropriately to changes in the work setting and she requires a lot [sic] of stress job that requires little or no interaction with other people.

6. The claimant is unable to perform any past relevant work (20

CFR 404.1565 and 416.965).

7. The claimant was born on April 20, 1967 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.15679(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-23].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S.

4

137, 146 (1987)).

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.　POSITIONS OF THE PARTIES**

The Plaintiff presents a single allegation of error. She argues that the ALJ erred in failing to afford weight to the opinion of the Plaintiff's treating physician and by failing to provide "good reasons" for not adopting this opinion. [Doc. 12 at 11]. Specifically, the Plaintiff argues that Michael Smith, M.D., has treated the Plaintiff at Cherokee Health Systems since September 2004, and his opinion that the Plaintiff had "poor" abilities in certain area of social interaction

6

should have been afforded additional weight. [Doc. 12 at 13].

The Commissioner responds that the ALJ did not violate the procedural requirement of 20 C.F.R. § 404.1527(d)(2), in addressing Dr. Smith's opinion, because Dr. Smith's opinion was "so patently deficient" that the Commissioner could not possibly credit it. [Doc. 12 at 16 (citing Wilson v. Comm'r Soc. Sec., 378 F.3d 541 (6th Cir. 2004))]. The Commissioner cites two examples of this alleged deficiency: (1) Dr. Smith's finding that the Plaintiff could not manage her benefits, despite her testifying that she managed her mother's finances and (2) Dr. Smith's finding that the Plaintiff would be ill-suited for work despite instructing her to find work on two occasions. [Doc. 16 at 12].

V.   ANALYSIS

The Plaintiff cites the Court to a "Treating Relationship Inquiry" form, ("the Inquiry"), completed by Dr. Smith on January 22, 2008. Therein, Dr. Smith states that the Plaintiff has bipolar disorder, panic disorder with agoraphobia, and obsessive compulsive disorder. [Tr. 290]. When asked if the Plaintiff could reasonably be expected to be reliable in attending an eight-hour day, forty-hour work week "week after week," Dr. Smith responded "No" and cited the Plaintiff's mood swings, anxiety, and panic attacks. [Tr. 290].

When the form asked Dr. Smith to rate Ms. Watson's abilities in twenty-two different social and work-related activities, he found that she had "poor" abilities in eighteen areas and "fair" abilities in the other four areas. [Tr. 291-92]. He found she had a "poor" ability to perform each of the following: interacting appropriately, communicating effectively, and engaging in other aspects of social functioning; concentrating, persisting, and maintaining pace; adapting to stressful circumstances in work or work-like settings, where failure to adapt results in

7

repeated episodes of deterioration or decompensation which cause patient to withdraw or to experience an exacerbation of symptoms; behaving in an emotionally stable manner; relating predictably in social situations; following work rules; dealing with the public; dealing with the stress of ordinary work; demonstrating reliability; persisting at assigned tasks; relating to peers; relating to supervisors and co-workers; working at a consistent pace; completing tasks commonly found in work settings in a timely fashion; using judgment; and maintaining attention. [Tr. 291-92].

In a letter to Dale Buchanan &Associates, P.C., Attorneys at Law, also dated January 22, 2008, Dr. Smith wrote:

> Ms. Watson has been under my care since September 2004 for diagnoses of: Obsessive Compulsive Disorder, Bipolar Disorder, mixed type and Panic Disorder with agorophobia [sic]. Prognosis for significant recovery is poor. These conditions prevent her from working. She will require continued monitoring and treatment.

[Tr. 289].

The ALJ addressed these documents by explaining:

> On January 22, 2008, her psychiatrist, Dr. Michael Smith at Cherokee Health System, indicated the claimant had been under his care since September 2004 for obsessive compulsive disorder, bipolar disorder, mixed type and panic disorder with agoraphobia. Dr. Smith felt her prognosis for significant recovery was poor. He opined that these conditions prevent her from working. It is noted that an opinion that the claimant is unable to work is reserved to the Commissioner (20 CFR 404.1527(e)(2)[)]. At that time, Dr. Smith felt she would require continued monitoring and treatment.

[Tr. 18].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

8

evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

Both parties cite the Court to Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004), in support of their positions. In Wilson, the ALJ did not credit the opinion of a physician who had treated the plaintiff for seven years. Id. at 545. The ALJ stated that he had "considered" the opinion and explained only that while ''this opinion may be an accurate assessment of [Wilson's] current limitations, the undersigned must assess the claimant's limitations on March 31, 1995, the date he was last insured for benefits.'' Id.

9

The Court of Appeals for the Sixth Circuit found this explanation unacceptable, stating, "The ALJ's summary dismissal of [the treating physician's] opinion fails to meet the requirement that the ALJ 'give good reasons' for not giving weight to a treating physician." Id. The Court of Appeals added, "A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." Id. at 546.

In this case, the ALJ discounted Dr. Smith's general opinion that the Plaintiff could not work, and she stated her basis for doing so under 20 C.F.R. § 404.1527(e)(2). The Court finds that the ALJ properly discussed this opinion, which was contained in the letter dated January 22, 2008, and did not err in this regard.

The ALJ did not, however, discuss the weight afforded to Dr. Smith's findings regarding the Plaintiff's specific abilities – *i.e.* her ability to follow work rules, deal with the public, and deal with the stress of ordinary work. She implicitly discounted these findings by concluding that the Plaintiff retained a residual functional capacity greater than that indicated by Dr. Smith's findings. In reaching her residual functional capacity determination, the ALJ only gave a general, and somewhat boiler-plate statement that she did not find the Plaintiff's testimony consistent with the evidence in the record including her own report life activities.

The ALJ never alluded to or in any way summarized the findings of Dr. Smith. Nor did she state a basis for discounting these findings. Thus, the Court finds that the ALJ violated the procedural requirements of 20 C.F.R. § 404.1527(d)(2). The Court must, however, consider whether this violation was harmless. For the reasons stated below, the Court finds that the violation was not harmless.

10

Following the decision in Wilson, it has been widely recognized by courts in this Circuit that certain violations of the procedural requirement of 20 C.F.R. § 404.1527(d) could be harmless where a treating physician's opinion is "patently deficient." See Payne v. Comm'r of Social Sec., 402 Fed. App'x 109, 121 (6th Cir. 2010); see also Rabbers v. Comm'r Soc. Sec., 582 F.3d 647, 657 (6th Cir. 2009). The Court has examined the cases in which courts have found treating physician's opinions to be "patently deficient," and the Court finds that those cases are not analogous to the instant case. Courts have only found "patent deficiency" in cases where the physicians' opinions contained defects or implausibilities far beyond those allegedly contained in Dr. Smith's findings. See, e.g., McKeehan v. Astrue, 2009 WL 1704334, *5 (E.D. Ky. 2009) (finding a case to be "an unusual instance of a treating physician opinion being so patently deficient that the ALJ could not possibly credit it" where the physician opined that the plaintiff was limited to no sitting, standing, or walking, despite her not being bed-ridden); see also Ratliff v. Astrue, 694 F.Supp.2d 751, 756 (N.D. Ohio 2010) (noting the rarity with which courts find opinions to be "patently deficient").

In this case, Dr. Smith saw the plaintiff on approximately twenty different occasions between September 9, 2004, and April 15, 2008. The Commissioner cites the Court to two examples of deficiencies in support of finding the error harmless. First, Dr. Smith's finding that the Plaintiff could not manage her benefits, despite her testifying that she managed her mother's finances, and second, Dr. Smith's finding that the Plaintiff would be ill-suited for work despite instructing her to find work and describing work attempts. The Court will address each of these allegations in turn.

First, the Court finds that Dr. Smith's indication that the Plaintiff could not manage her benefits does not undermine his years of treatment to such a degree that the findings contained in

11

the Inquiry should be treated as "patently deficient." While the Plaintiff's testimony at the hearing arguably supports finding that the Plaintiff had an ability to manage her own benefits, it appears to the Court that discounting Dr. Smith's opinion on this basis would be excessive. This inconsistency is precisely the type of consideration the ALJ should have discussed. It does not render Dr. Smith's findings "patently deficient."

Turning to the Commissioner's second argument, the Commissioner cites the Court to notes made by Dr. Smith referencing the Plaintiff's ability to do work. For example on December 11, 2006, Dr. Smith noted that the Plaintiff was in danger of losing an apartment "she dearly loves," so he "suggested that perhaps she try to find at least a part-time job to get caught upon [sic] her finances." [Tr. 432]. Such notes, however, should be contrasted with Dr. Smith's later observations that "given her current emotional status I doubt seriously that she could hold down a job at this point," and Dr. Smith's later notes that her work attempts were unsuccessful. [Tr. 295, 426]. The Court has reviewed Dr. Smith's notes and the Court cannot say that the notes conflict with his findings in the Inquiry, in such a way that the Inquiry could be described as "patently deficient." As stated above, these type of inconsistencies are precisely what the ALJ should have cited to the Plaintiff in explaining why she would not be awarded benefits. They are not errors of such degree that Dr. Smith's findings should be ignored in whole.

Thus, the Court has considered the Commissioner's arguments in support of finding the ALJ's error to be harmless. The Court finds that these arguments are unavailing. The Court finds that the ALJ committed reversible error and the Court will recommend that this case be remanded to the Commissioner for explanation of the weight afforded to the findings of Dr. Smith or "good reasons" for discounting his findings, consistent with 20 C.F.R. § 404.1527(d).

## VI. CONCLUSION

Accordingly, the Court finds that the ALJ erred in reviewing and weighing the evidence in the record. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **GRANTED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **DENIED**. The undersigned **RECOMMENDS** that this case be **REMANDED** to the Commissioner for further consideration of the evidence consistent with this opinion.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

13

Case 3:11-cv-00229-TAV-CCS   Document 17   Filed 06/11/12   Page 13 of 13   PageID #: 87